IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| UNITED STATES OF AMERICA, | CR 16-30-BLG-SPW |
|---|---|
| Plaintiff, | |
| vs. | ORDER |
| MATTHEW STONEY OLSON, | |
| Defendant. | |

Before the Court is Defendant Matthew Stoney Olson's Objection to the Petition for Summons for Offender Under Supervision. (Doc. 198). The United States opposes the objection. (Doc. 201). For the following reasons, the Court overrules his objection.

I. Background

Olson was found guilty by a jury of Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2) and Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) on October 18, 2017. (Docs. 95, 96, 97). On February 15, 2018, he was sentenced to a total term of imprisonment of 84 months and a total term of supervised release of 20 years. (Doc. 126).

Olson completed his term of imprisonment and began supervision on March 11, 2024. (Doc. 190 at 1). During supervision, Olson is required to comply with the standard conditions of release and 15 special conditions of release that the Court

1

imposed at sentencing. (Doc. 126 at 4–6). One of the conditions requires the following: "The defendant shall enter and successfully complete a sex offender treatment program. The defendant is to enter a program designated by, and until released by, the United States Probation Office. The defendant is to pay all or part of the costs of treatment as directed by United States Probation Office." (*Id.* at 6).

On May 8, 2024, Olson's probation officer, Josh Lachenmeier, filed and the Court signed a Petition for Summons for Offender Under Supervision ("Petition") seeking revocation of Olson's supervised release. (Doc. 190). The Petition stated that Olson failed to comply with the sex offender treatment condition because on April 24, 2024, Olson was terminated from treatment with South Central Treatment Associates. (*Id.* at 1–2). According to the Petition, South Central Treatment Associates terminated Olson because he failed to sign the facility's policy and procedure acknowledgement form ("the Policies"). (*Id.* at 2). After Olson's initial appearance on June 4, 2024, the Court scheduled the hearing on final revocation for 1:30 p.m. on July 10, 2024. (Doc. 197).

The morning of the hearing, Olson filed the instant objection. The United States requested three weeks to respond, which the Court granted. (Docs. 199, 200). The Court reset the hearing for 3:30 p.m. on August 21, 2024. (Doc. 203).

The United States timely filed its response to Olson's objection. (Doc. 201). Olson did not reply.

2

## II. Discussion

As an initial matter, Olson generally asserts that failing to sign the Policy is "not a basis for revocation of supervised release." (Doc. 198 at 2). This is not a correct characterization of the basis for the Petition. The Petition alleges that Olson violated his terms of supervision because he was terminated from sex offender treatment. (Doc. 190 at 1–2). The reason South Central Treatment Associates provided for his termination was his refusal to sign the Policies. (*Id.* at 2). Though minor, this distinction is important to establish at the outset.

The question, therefore, becomes whether the Policies that Olson must sign to remain in treatment in compliance with the condition of supervision requiring that he complete sex offender treatment are legal. Olson contends that three of the provisions in the Policies are unconstitutional because they place him at risk of self-incrimination in violation of the Fifth Amendment.[1] (Doc. 198 at 2–3). Olson also argues that five other provisions the parties refer to as "lifestyle restrictions" are not tailored to his individual circumstances and improperly provide South Central Treatment Associates with delegated judicial authority. (*Id.* at 3–5).

The United States responds that Olson lacks standing to lodge a Fifth Amendment challenge because his concern about "potential future self-

---

[1] Olson also mentions the Sixth Amendment, but none of his successive arguments implicate the Sixth Amendment. (*See* Doc. 198 at 1). As such, the Court will not discuss the Sixth Amendment.

3

incrimination" if he signed the Policies is "hypothetical." (Doc. 201 at 5–6). The United States also disagrees with Olson's substantive objections to the Policies. (*Id.* at 4–8).

The Court will address the United States' ripeness argument, the Fifth Amendment concerns, and Olson's other objections in turn.

A.   *Ripeness*

The United States argues the Court should overrule Olson's objection because a "hypothetical concern about potential future self-incrimination if he signed the [P]olicies" does not satisfy standing's injury in-fact requirement. (*Id.* at 5–6). Olson did not file a reply and therefore has taken no position on the issue.

The Court finds Olson's objection is ripe. "The constitutional component of ripeness is a jurisdictional prerequisite." *United States v. Antelope*, 395 F.3d 1128, 1132 (9th Cir. 2005); *see also Cal. Pro–Life Council, Inc. v. Getman*, 328 F.3d 1088, 1093–94 & n. 2 (9th Cir. 2003) (noting that the question of ripeness often "coincides squarely with standing's injury in fact prong"). To determine whether a defendant suffered an injury in fact, the court must identify "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Antelope*, 395 F.3d at 1132 (internal citation omitted). "A claim is not ripe if it involves 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *United States v. Streich*, 560 F.3d 926,

931 (9th Cir. 2009) (quoting *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). "At the same time, a litigant need not 'await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.'" *Id.* (quoting *18 Unnamed John Smith Prisoners v. Meese*, 871 F.2d 881, 883 (9th Cir. 1989)).

When a defendant seeks to challenge a condition of supervised release pursuant to the Fifth Amendment after they have been sentenced but before their supervised release has commenced, their challenge is not ripe. *See United States v. Abbouchi*, 502 F.3d 850, 859 (9th Cir. 2007); *see also Streich*, 560 F.3d at 932 (denying as unripe the defendant's challenge to the inclusion of information about his psychosexual treatment in his presentence investigation report on the grounds that it could provide grounds for a civil commitment under the Adam Walsh Act because civil commitment was a "'contingent future event' that 'may not happen at all.'"). By contrast, when a defendant seeks to challenge a condition implicating the Fifth Amendment after having started supervision and been incarcerated for violating the challenged condition on a petition to revoke, the defendant's challenge is ripe. *See Antelope*, 395 F.3d at 1132–33. In the latter case, the defendant "has already suffered the very serious and non-hypothetical injury of imprisonment after he invoked his Fifth Amendment right." *Id.* at 1133. "Indeed, it is difficult to imagine a more paradigmatic 'injury in fact' than actual incarceration." *Id.*

5

Olson's case falls somewhere between these two scenarios: though he has begun his term of supervision and sex offender treatment, he has not been punished for invoking his Fifth Amendment right. However, the Court finds Olson's case more similar to *Antelope* because a scenario that could lead to self-incrimination is not a contingent future event. Rather, he is presently on supervision and presently required to complete sex offender treatment, which involves disclosing his current sexual activity and submitting to polygraphs. Thus, his injury is "certainly impending," such that his challenge is ripe.

### B.  *Fifth Amendment*

Moving to the Fifth Amendment issue, Olson argues that the following provisions in the Policies violate his Fifth Amendment right against self-incrimination: (1) he must keep his therapist informed of his "current sexual behavior"; (2) he must "fully cooperate with law enforcement"; and (3) he "must be willing to submit to polygraph testing as requested by the treatment team." (Doc. 198-1 at 2–3). Olson asserts these provisions require him to choose between potentially incriminating himself to comply with the Policies to avoid termination and refusing to incriminate himself, failing to comply with the Policies, and facing termination and, by extension, revocation. (Doc. 198 at 4). Olson relies on the Ninth Circuit's decision in *Antelope*, which held that requiring the defendant to participate in a treatment program that required him to provide his full sexual history and to

6

verify that history with a polygraph violated his Fifth Amendment right against self-incrimination. (*Id.* at 3–4 (citing *Antelope*, 395 F.3d 1128)).

The Government responds that *Antelope* is distinguishable because Olson is only required to "keep his therapist informed of his current sexual behavior," which is "a comparatively nonviolative requirement," compared to the sexual history disclosure and polygraph verification requirement in *Antelope*. (Doc. 201 at 5).

The Fifth Amendment guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This right remains available to a defendant despite their conviction. *See Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) ("A defendant does not lose this protection by reason of his conviction of a crime ...."). To establish a Fifth Amendment claim, a defendant must prove two elements: (1) "the testimony desired by the government carried the risk of incrimination, *see Murphy*, 465 U.S. at 435 n.7 (explaining that the state may compel answers 'as long as it ... eliminates the threat of incrimination'"); and (2) "the penalty he suffered amounted to compulsion, *see Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977)." *Antelope*, 395 F.3d at 1134 (cleaned up).

The parties' arguments only address the compulsion element. As such, the Court will focus its analysis there.[2]

---

[2] The Court is dubious that Olson could satisfy the incrimination element. The incrimination element requires "a real and appreciable danger of self-incrimination. *McCoy v. Comm'r of Internal Revenue*, 696 F.2d 1234, 1236 (9th Cir. 1983) (internal quotation marks omitted). The threat cannot be "remote, unlikely, or speculative" for the privilege to apply. *Id.* Thus, "it may

7

"The second prong of the self-incrimination inquiry asks whether the government has sought to 'impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself.'" *Id.* at 1135 (quoting *Lefkowitz*, 431 U.S. at 805). The U.S. Supreme Court has rejected a challenge to a condition requiring a defendant to "'be truthful with [his] probation officer in all matters' or 'return to the sentencing court for a probation revocation hearing.'" *Id.* at 1138 n.4 (quoting *Murphy*, 465 U.S. at 422). The Court held that the condition did not violate the Fifth Amendment because "the defendant 'could not reasonably have feared that the assertion of the privilege would have led to revocation,' given that the state would have provided a hearing before revocation, and defendant could have raised the privilege as a reason for noncompliance, and that the defendant could point to no case in which Minnesota revoked probation when a probationer 'refused to make nonimmunized disclosures concerning his own criminal conduct.'" *Id.* (quoting *Murphy*, 465 at 439). The *Murphy* court explained "that the outcome would have differed if the state 'expressly or by implication, assert[ed] that invocation of the privilege would lead to revocation of probation,'

---

only be invoked when the threat of future criminal prosecution is reasonably particular and apparent." *Antelope*, 395 F.3d at 1134. *Antelope* found the compulsion element satisfied because "the nature of this requirement and Antelope's steadfast refusal to comply" led to a "fair" inference that "his sexual autobiography would, in fact, reveal past crimes." *Id.* Supporting this inference was the defendant's treatment counselor's suspicion that Antelope committed prior sex offenses. *Id.* Olson has not refused to comply with any specific questions or has, to the Court's knowledge, been suspected of other sex offenses. Without such specific facts to constitute a "real and appreciate danger of self-incrimination," Olson likely could not satisfy the incrimination element.

8

because this would have resulted in 'the classic penalty situation.'" *Id.* (quoting *Murphy*, 465 at 439).

In contrast, in *Antelope*, the Ninth Circuit found Antelope's Fifth Amendment rights were violated because, as a result of asserting his Fifth Amendment right when asked to comply with his treatment's disclosure requirements, the district court sentenced him to a longer prison term. *Id.* at 1138.

Olson's situation is more like *Murphy* than *Antelope* because nothing in the Policies or the record indicates that Olson has invoked his Fifth Amendment rights and been subject to revocation as in *Antelope*, or that, if Olson invoked his Fifth Amendment right in any of the situations described in the Policies, he would be revoked. The Policies are silent on the impact of the Fifth Amendment on Olson's obligations during treatment. Accordingly, Olson's Fifth Amendment claim fails on the compulsion element.

### C. *Lifestyle Restrictions*

Olson last objects to the various lifestyle restrictions required by the Policies, namely: the prohibitions on drug and alcohol use, frequenting bars, and gambling; the discretionary requirement of physical exams; the mandatory development of a healthy living plan, which may include but is not limited to physical fitness/exercise, proper diet, and maintaining proper health care; and the stipulation that a client may

9

be terminated from treatment 'for using poor judgment in the community..." (Doc. 198 at 3 (citing Doc. 198-1 at 2–3)).

Olson first argues that these provisions "have no nexus to the offense of conviction and therefore do not have any connection to a legitimate sentencing purpose." (*Id.*). He does not elaborate on this argument.

Olson also contends that the healthy living plan requirement is overly broad and an improper delegation of judicial authority. (*Id.* at 4). Olson explains that the Ninth Circuit upheld a "lifestyle provision in sexual offender treatment" that was "tethered to the treatment program" and did not "permit the therapist to impose conditions that would extend beyond the treatment program, or create independent conditions of release apart from complying fully with the treatment program." (*Id.* at 4–5 (citing *United States v. Fellows*, 157 F.3d 1197 (9th Cir. 1998)). Olson argues that his case is not like *Fellows*. Rather, he asserts his case is more like *United States v. Morin*, in which the Fifth Circuit struck down a condition of supervision that required the defendant comply with "unspecified lifestyle restrictions" that could be imposed by his treating therapist as an impermissible delegation of judicial authority because it imposed requirements beyond the treatment program and could effectively impose conditions independent of those conditions ordered by the court. (*Id.* (citing 832 F.3d 513 (5th Cir. 2016))).

The United States responds that district courts do "not need to approve every detail of a treatment program" and can "delegate certain responsibilities to probation officers and treatment professionals." (Doc. 201 at 6 (citing *United States v. Stephens*, 424 F.3d 876, 881–82 (9th Cir. 2005))). Since the Court here implicitly delegated authority to South Central Treatment Associates to design Olson's treatment, the lifestyle restrictions are lawful. (*Id.* at 7).

The lifestyle restrictions are lawful under *Fellows* and *Morin*. Like in *Fellows*, the Court's condition regarding sex offender treatment "simply requires [Olson] to comply fully with that program," as noncompliance that results in termination can be a basis for revocation. 1157 F.3d at 1204. The Court also properly delegated authority to the treatment provider because "[t]he therapist is in the best position to know what lifestyle restrictions are necessary to enhance his treatment and reduce the likelihood that he will re-offend .... The court cannot be expected to design and implement the particularities of a treatment program." *Id.* As *Fellows* explained, "[u]nless [a defendant] is required to comply with those restrictions, he will not receive the full benefit of the treatment program." *Id.*

*Morin* is distinguishable from Olson's case and *Fellows*. In *Morin*, the district court imposed a separate requirement that Morin comply with all lifestyle restrictions imposed by a therapist. *Id.* at 515. The Fifth Circuit concluded that the condition would effectively require compliance with the therapist's lifestyle

11

restrictions "throughout the entirety of supervised release" and therefore was not "tethered to the treatment program." 82 F.3d at 516, 517. The Fifth Circuit further noted that non-compliance with unspecified lifestyle restrictions imposed by the therapist, not the Court, could provide an independent basis for revocation and therefore was an impermissible delegation of judicial authority. *Id.* at 517. *Morin* explains that, in contrast, the condition in *Fellows* was "tethered to the treatment program" because the lifestyle restrictions would be in effect only during treatment, not throughout the entire term of supervised release. *Id.*

Here, no provision in the Policies or condition imposed by the Court requires Olson to comply with the Policies following the termination of treatment or dictates that noncompliance with the Policies without termination would provide grounds for revocation. As such, the lifestyle restrictions are lawful.

### III. Conclusion

IT IS SO ORDERED that Defendant Matthew Stoney Olson's Objection to the Petition for Summons for Offender Under Supervision (Doc. 198) is OVERRULED.

DATED this 21st day of August, 2024.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge